IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

CATHERINE J. BOLSSEN,

                Plaintiff,                    OPINION AND ORDER

v.

                                                19-cv-116-wmc

ANDREW M. SAUL, Commissioner of
Social Security,

                Defendant.

Pursuant to 42 U.S.C. § 405(g), plaintiff Catherine J. Bolssen seeks judicial review of a final determination that she was not disabled within the meaning of the Social Security Act. This is Bolssen's second appeal, the court having previously remanded based on the administrative law judge's failure to adequately explain his finding that Bolssen could be off-task up to 10% of the time to accommodate her moderate limitation in concentration, persistence and pace ("CPP"). *Bolssen v. Berryhill*, No. 15-cv-824 (W.D. Wis. Jan. 10, 2018) (dkt. #22). (AR 1165.) In this appeal, Bolssen contends that remand is again warranted because: (1) the new administrative law judge ("ALJ") also failed to account for her finding of a moderate limitation in CCP by limiting her to "simple, routine tasks"; and (2) the ALJ violated the "law of the case" doctrine by finding for the first time that she was capable of frequent fingering. Although the law of the case doctrine does not apply to the ALJ's new fingering limitation, the court agrees that the ALJ seems to have replaced one disfavored, catch-all phrase to address Bolssen's moderate limitation in CPP with an equally disfavored, catch-all phrase while *still* providing almost no reason for doing so.

Accordingly, the court reluctantly remands again for a meaningful explanation as to how the language chosen actually accommodates Bolssen's moderate CPP limitations.

BACKGROUND[1]

Plaintiff Catherine J. Bolssen has an eleventh-grade high school education, is able to communicate in English, and has past work experience as a self-service gas attendant. Bolssen last worked in 2008, and she only worked sporadically before her alleged disability onset date.

Bolssen applied for social security disability benefits and supplemental security income on February 6, 2012, claiming an alleged onset date of April 1, 2008, and disability based on diabetes. (AR 87.) With a birth date of June 6, 1974, Bolssen was 33 years-old at the alleged onset date, 37 at the time she filed her initial application, 39 at the time of the first hearing before the ALJ, and 43 at the time of her second hearing. As such, for this entire period, Bolssen is defined as a "younger individual." 20 C.F.R. § 416.963.

Following remand by this court, ALJ Ahavaha Pyrtel held an evidentiary hearing via videoconference on April 30, 2018, at which plaintiff appeared personally and by counsel (the same counsel representing her on appeal now). As of the alleged onset date of April 2008, the ALJ found that Bolssen had the following severe impairments: diabetes mellitus, recurring arrhythmias/cardiac dysrhythmias with episodes of syncope, degenerative disc disease of the lumbar spine, degenerative joint disease, residuals of fracture of finger on

---

[1] The following facts are drawn from the administrative record, which can be found at dkt. #8.

right hand, obesity, anxiety disorder and depressive disorder.  (AR 1074.)  Consistent with the prior decision, the ALJ also found that Bolssen had moderate limitations in concentrating, persisting, or maintaining pace.  (AR 1075.)  In finding moderate CPP limitations, the ALJ relied on the opinions of two state agency psychological consultant, as well as the March 2017 opinion of the consultative mental examiner Kurt Weber, Ph.D., all of whom found Bolssen had the same moderate limitations in this area.  (AR 1074-75.)

In crafting Bolssen's residual functional capacity ("RFC"), the ALJ again limited her to light work, but modified two of her original restrictions:  to "frequently handle and finger with the right hand/arm," rather than the "occasional" limitation in the original ALJ decision' and to "performing simple, routine tasks," rather than being "off task up to 10% of the time."  (AR 1076.)  In justifying the frequent fingering limitation, after acknowledging the prior limitation to occasional fingering, the ALJ concluded on remand

> that the claimant has no limit in pushing/pulling and can frequently handle and finger with the right hand.  As already explained in the prior ALJ decision, the claimant recovered from the fracture of a finger on her right hand in 2012 in less than 12 months.  By November 2012, she denied pain and her examination showed normal grip and extension (Exh 12F/2-3). . . . Her residual problems may have caused some limitation to frequent handling and fingering for some period of time, as is stated in the residual functional capacity.  The evidence received at the hearing level documents no further complaints of symptoms or any abnormality on examination that would support her being unable to frequently handle or finger with the right hand (and no limitation with the left hand)[.]

(AR 1078.)

With respect to the revised "simple, routine tasks" limitation to accommodate for plaintiff's moderate limitations in CPP, the ALJ explained:

3

> The District Court remanded the claimant's case because the prior 2014 ALJ decision did not adequately explain the functional limitation that the claimant would be off task up to 10% of the workday in addition to regular breaks. On remand, the undersigned concludes that the limitation is not supported by the record. The claimant's allegations of panic attacks are not supported by the record. The record does not document mental health symptoms that would cause additional time off task. The claimant's moderate limitation in concentration, persistence or pace is accommodated by limiting her to performing simple, routine tasks.

(AR 1081.)[2]

OPINION

The standard by which a federal court reviews a final decision by the Commissioner of Social Security is well-settled. Findings of fact are "conclusive," so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the

---

[2] Normally, at this point in an opinion addressing a Social Security disability determination, the court would summarize the medical record relevant to the appeal. However, plaintiff's challenges here do not concern the medical record or the ALJ's interpretation of that record. Suffice it to say that the medical record details plaintiff's reports of back pain, syncope, diabetes and arrythmias, as set forth in plaintiff's brief (Pl.'s Opening Br. (dkt. #11) 5-11), although none of this evidence is particularly relevant to the issues raised in plaintiff's appeal.

4

responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). At the same time, the court must conduct a "critical review of the evidence," *id.*, and insure the ALJ has provided "a logical bridge" between findings of fact and conclusions of law, *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

I.  **Limitation to "Simple, Routine Tasks"**

Plaintiff principally contends that the ALJ again erred in her treatment of Bolssen's moderate limitations in CPP with respect to in formulating and articulating an RFC for the vocational expert. More specifically, consistent with well-established case law in the Seventh Circuit, Bolssen contends that a limitation to "simple, routine tasks" is insufficient to account for his CPP imitations, rendering both the RFC formulation and, as a consequence, opinions by the vocational expert deficient. *See, e.g., O'Connor-Spinner v. Astrue*, 627 F.3d 614, 617 (7th Cir. 2010) (ALJ should refer "expressly to limitations on concentration, persistence, and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do"); *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("When it comes to the RFC finding, we have likewise underscored that the ALJ generally may not rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for problems of concentration, persistence or pace." (citation and quotation marks omitted)).

In his opposition brief, the Commissioner contends that the ALJ's treatment of the CPP limitation falls within two of the exceptions allowed under *O'Connor-Spinner*. First, the Seventh Circuit held that "an ALJ may reasonably rely upon the opinion of a medical

5

expert who translates [CPP] findings into an RFC determination." *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019); *see also Milliken v. Astrue*, 397 F. App'x 218, 221 (7th Cir. 2010) (holding that an ALJ may rely on the opinion of "a medical expert who effectively translated an opinion regarding the claimant's mental limitations into an RFC assessment"); *Rankila v. Saul*, No. 18-CV-406-WMC, 2019 WL 4942110, at *3 (W.D. Wis. Oct. 8, 2019) (providing overview of Seventh Circuit cases describing this exception). The Commissioner further contends that ALJ Pyrtel did just that by relying on "the narrative statements of Dr. Rattan and Dr. O'Brien that Plaintiff could perform simple work despite a moderate limitation in concentration, persistence, or pace." (Def.'s Opp'n (dkt. #13) 2 (citing AR 99, 1144).)

State agency psychological consultant Roger Rattan, Ph.D., conducted a record review very early in the administrative process, dated August 24, 2012, in which he concluded that Bolssen would have moderate limitations in "maintain[ing] attention and concentration for extended periods," but also found that she is "capable of learning, remembering and carrying out simple instructions." (AR 99.) Even so, the ALJ neither mentioned Dr. Rattan nor his 2012 review in her decision. Therefore, there is no basis in the record to conclude that she relied on this medical finding in translating Bolssen's CPP challenges into a "simple, routine tasks" limitation.

Instead, the ALJ purported to consider the more recent reviews conducted by Larry Kravitz, Psy.D., dated April 9, 2017, and Kathleen O'Brien, Ph.D., dated July 5, 2017. (AR 1081 (citing Exs. 5A, 7A). (*See also* AR 1134-35 (Kravitz's report); AR 1143-45 (O'Brien's report).) However, in the court's review of Dr. O'Brien's report -- specifically,

6

at page 1144 cited by the Commissioner in his brief -- the only reference to "simple, routine tasks" is Dr. O'Brien's note that "ME [medical examiner, likely Dr. Weber] believes cl[aimant] would experience mild limitations in ability to understand, remember and carry out simple instructions." (AR 1144 (all caps removed).) Although Dr. O'Brien also opined that "CPP were adequate," and found her "[m]ental MDIs to be non severe" (*id.*), the ALJ expressly rejected this view, and instead agreed with Dr. Kravitz's and Dr. Weber's opinions that her mental illness was a severe impairment and supported a moderate limitation in CPP. (AR 1081.) Regardless, Dr. O'Brien does *not* opine that Bolssen's CPP limitations would be adequately addressed by limiting her to simple, routine tasks.

Finally, there is Dr. Kravitz, who was *not* cited by the Commissioner in his brief, but whose views the ALJ discussed at length in her decision. Kravitz similarly offered *no* opinion as to what residual functional capacity limitations would need to be in place to address Bolssen's moderate limitation in CPP. Instead, Dr. Kravitz merely stated, "the [medical evidence of record] would support a moderate restriction in c/p/p mentally." (AR 1128.)

However, there is a *second*, recognized exception to the general rule that the ALJ must specifically account for CPP limitations in formulating an RFC and any related hypotheticals posed to the vocational expert: the court will affirm "RFC determinations . . . when they adequately account for the claimant's demonstrated psychological symptoms." *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (citing *Johansen v. Barnhart*, 314 F.3d 283, 288–89 (7th Cir. 2002)); *see also O'Connor-Spinner*, 627 F.3d at 619 (providing examples of this exception). In other words, while the generic limitation

7

to "simple, routine tasks" may not be relied on to address all CPP limitations, there are cases where such a limitation may be appropriate *if* adequately explained. For example, in *Jozefyk*, the Seventh Circuit rejected a plaintiff's CPP challenge in affirming the denial of disability benefits because the ALJ limited the plaintiff to "routine tasks and limited interactions with others," which addressed the underlying cause of the plaintiff's CPP limitation -- social anxiety. 923 F.3d at 498. Similarly, in *Dudley v. Berryhill*, 773 F. App'x 838 (7th Cir. 2019), the court concluded that the ALJ "adequately addressed" the claimant's stress- and panic-related limitations by limiting her to

> 'simple, routine and repetitive tasks, work involving no more than simple decision-making, no more than occasional and minor changes in the work setting, and work requiring the exercise of only simple judgment'; by excluding work above an average pace, at a variable pace, or in crowded, hectic environments; and by limiting her interactions with the public, supervisors, and coworkers.

*Id.* at 842.

Here, the ALJ discussed the opinions of two state agency psychological consultants, Drs. Kravitz and O'Brien, as well as the opinion of the psychological consultant, Dr. Weber, and explained why she was crediting certain portions of those opinions and not crediting others. Ultimately, unlike in *Jozefyk* and *Dudley*, the ALJ failed to explain in *any* meaningful way why placing some weight on the opinions of Drs. Kravitz and Weber would lead her to conclude that a limitation to "simple, routine tasks" addressed the source or underlying causes of plaintiff's moderate CPP limitations. As a result, the ALJ's conclusory statements that plaintiff's "mental illness meets the minimal burden of being severe" and that this finding "supports a limit to simple, routine work rather than more complex or

8

stressful work that may cause her symptom" are so many meaningless works, rather than the "logical bridge" that both plaintiff and his court had every reason to expect. (AR 1081.) In the end, therefore, the ALJ has once again failed to explain *why* the "simple, routine tasks" limitation address Bolssen's particular CPP limitation.

Finally, the Commissioner argues that, even if the ALJ erred in failing to explain the basis for the "simple, routine tasks" limitation adequately, the error is harmless this time around, since Bolssen has not explained or cited evidence in support of a finding that she could not perform simple, routine tasks. (Def.'s Opp'n (dkt. #13) 2 (citing *Jozefyk*, 923 F.3d at 498).) While the court agrees that plaintiff has failed to explain how her fairly limited record of mental health issues would support a finding that she could not perform simple, routine tasks, this conclusion still does not address whether limiting Bolssen to "simple, routine tasks" adequately addresses her CPP limitations. In *Jozefyk*, the Seventh Circuit did conclude that any error was harmless because the plaintiff failed to explain "what kinds of work restrictions might address" moderate limitations in CPP. 923 F.3d at 498; *see also Dudley*, 773 F. App'x at 842 ("Critically, Dudley did not identify any limitations that the ALJ omitted and should have included in the hypothetical question."). In contrast, Bolssen *has* identified sources of her anxiety and depression, and the impact that those mental health issues have on her ability for CPP that are *not* addressed by the RFC's limitation to "simple, routine tasks." In particular, a substantial source of Bolssen's anxiety is demands that she work at a particular pace out of her control, what plaintiff's counsel described during the hearing as *work* driven pace, as opposed to work*er* driven pace. This limitation, along with "simple, routine tasks," may well have been a sufficient

limitation given Bolssen's actual ability to perform. As such, the court rejects the Commissioner's claim that any error was harmless.

## II. Law of the Case

Finally, Bolssen contends remand is warranted because ALJ Pyrtel changed the fingering requirement for her right hand from "occasional," as formulated in the first ALJ decision, to "frequent," thus violating the law of the case doctrine. Even assuming that this doctrine applies in the social security context, all of the cases that plaintiff relies upon require the "administrative agency, on remand from a court, [to] conform its further proceedings in the case to the principles set forth in the judicial decision." (Pl.'s Opening Br. (dkt. #11) 28 (quoting *Copart, Inc. v. Admin. Review Bd., U.S. Dep't of Labor*, 495 F.3d 1197, 1201 (10th Cir. 2007)); *see also Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998) ("The law of the case doctrine . . . requires the administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart.").

Here, as part of the first appeal, the *only* issue the court determined in remanding the case for further administrative review was the 10% off task finding. The court made *no* determination as to the sufficiency of the occasional fingering RFC limitation in the first ALJ decision. Indeed, in reviewing Bolssen's brief in the first appeal, the only issue she raised was the 10% off task finding. As such, there was *no* other judicial determination that the ALJ on remand was required to follow. *See Key v. Sullivan*, 925 F.2d 1056, 1061 (7th Cir. 1991) (holding that "the law of the case doctrine comes into play only with respect to issues previously determined," and that "[i]f an issue is left open after remand,

the lower tribunal is free to decide it"); *Angevine v. Sullivan*, 881 F.2d 519, 522 (7th Cir. 1989) (stating that to determine whether the Government violated the law of the case on remand, the Court must carefully consider the scope of the district court's remand order).

ORDER

IT IS ORDERED that the decision of defendant Andrew M. Saul, Commissioner of Social Security, denying plaintiff Catherine J. Bolssen's application for disability and disability insurance benefits and supplemental security income is REVERSED AND REMANDED under sentence four of 42 U.S.C. 405(g) for further proceedings consistent with the opinion set forth above.

Entered this 6th day of March, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge